**Signed and Filed: January 22, 2010**

_____
**THOMAS E. CARLSON
U.S. Bankruptcy Judge**
_____

UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re ) | Case No. 08-32226 TEC |
| 2712 MISSION PARTNERS, L.P., ) | Chapter 11 |
| ) | |
| Debtor. ) | |

**MEMORANDUM RE OBJECTIONS TO DISCLOSURE STATEMENTS AND SECURED CREDITORS' MOTION FOR RELIEF FROM STAY**

On January 11, 2010, the court held a hearing regarding three matters: the adequacy of the disclosure statement filed by Debtor; the adequacy of the disclosure statement filed by unsecured creditor 600 Alabama Partners LLC; and the joint motion of two secured creditors for relief from the automatic stay. Scott H. McNutt and Marianne Dickson appeared for Debtor. Merle C. Meyers appeared for David Bradlow, the chapter 11 trustee of 600 Alabama Partners LLC (600 Alabama). Jeanne M. Jorgensen appeared for secured creditor Los Angeles Federal Credit Union (LAFCU). Henry Lerner appeared for secured creditor Redwood Mortgage Investors

VIII (Redwood Mortgage). Timothy J. Gorry appeared for unsecured creditor Gorry, Meyer & Rudd, LLP (Gorry). Hutchinson B. Meltzer appeared for MKA Capital Group, Inc. (MKA).

Upon due consideration, and for the reasons stated below, the court declines to approve either disclosure statement, because neither plan can be confirmed. The court conditions the continuation of the automatic stay upon an effort to sell promptly the affected real property.

FACTS

Debtor is a limited partnership that owns an office building at 2712 Mission Street in San Francisco (the Property). The entire building is leased to the City and County of San Francisco (the City). The initial term of the lease expires in twenty months (September 30, 2011). The lease affords the City the option to extend the lease term for an additional five-year period. The City must exercise that option by April 3, 2011. The rent payable during the five-year extension is the greater of 95 percent of the current market rate or the rent during the previous term of the lease.

The Property is subject to three promissory notes secured by deeds of trust. The first deed of trust, which is held by LAFCU, currently has a balance of approximately $9.6 million. The second deed of trust, which is held by Redwood Mortgage, has a balance of approximately $1.2 million. The third deed of trust, which is held by MKA, currently has a balance of approximately $14 million. Both Debtor and 600 Alabama contend that the MKA deed of trust is avoidable as a fraudulent conveyance, and it appears that MKA may

agree to release its lien upon payment of $50,000. There is a lien for property taxes in the amount of $200,000. An appraisal obtained by Debtor indicates that the Property was worth approximately $13.3 million in March 2009. An appraisal obtained by LAFCU indicates that the Property was worth approximately $11.2 million in October 2009. Debtor has equity in the Property only if the value is at least $11.1 million and the MKA deed of trust is avoidable.

Allowed general unsecured claims total approximately $1.1 million. The largest of these claims are held by 600 Alabama ($850,000),[1] and Gorry ($220,000).[2]

Debtor filed this chapter 11 case on November 20, 2008 to stay a state-court action by LAFCU seeking appointment of a receiver. Debtor was in default under the first deed of trust, because it fell behind in its monthly mortgage payments, and because it breached a covenant prohibiting additional encumbrances.

The central facts of this case are these. The current lease, executed during the 2000-2008 real estate boom, provides sufficient rental income to make debt service payments to the first and second deeds of trust at the non-default rate. All parties agree that following the real estate crash of 2008, the rent specified in the

---

[1] Debtor objected to the $1.0 million proof of claim filed by 600 Alabama, and the dispute was settled on the day of trial with 600 Alabama to have an allowed general unsecured claim in the amount of $850,000. Debtor later moved to set aside that settlement, but the court denied that motion by order signed on January 22, 2010.

[2] Gorry now asserts a claim of $485,256, but did not file a timely proof of claim. At a hearing held on or about May 22, 2009, the court determined that the estate was estopped from objecting to the timeliness of any claim up to $220,000, because Debtor proposed to pay Gorry that amount in a plan filed prior to the claims bar date.

MEMO RE DISC. STMT. OBJECTIONS
AND STAY-RELIEF MOTIONS              -3-

current lease is substantially above the current market rate.  The
initial term of the current lease expires in less than two years.
All parties agree that if the Property is leased at a market rate
at that time, the rental income will not be sufficient to pay debt
service on the first and second deeds of trust.  The City has an
option, which it must exercise by April 3, 2011, to extend the
current lease for five years at the current rent.  Debtor and 600
Alabama suggest that the City will exercise this option, because of
the expense and inconvenience of moving to a new location.  An
economist would suggest that the lessor and tenant will likely
share whatever savings the City would enjoy by avoiding a move, and
that at the end of the current term, the parties will negotiate a
rent between the current above-market rent and the market rent.  In
the face of such logic, Debtor and 600 Alabama could show that the
City will exercise the option to extend a lease requiring it to pay
above-market rent only through a statement to that effect from City
officials, which those officials have no interest in providing.

    LAFCU and Redwood Mortgage moved for relief from stay on the
basis that: (1) Debtor has no equity in the Property; and (2) that
the Property is not necessary to an effective reorganization,
because Debtor is unable to confirm a plan under which it retains
the Property.  Debtor has previously filed three chapter 11 plans,
none of which have been confirmed.  The court determined that
sufficient time had passed since the filing of the petition that
relief from stay should be granted unless a plan was promptly
confirmed.  Debtor and 600 Alabama each filed a chapter 11 plan and
accompanying disclosure statement within the deadline set by the
court.

The chapter 11 plan filed by Debtor provides for the infusion of $1.7 million, which will be used to reinstate the first and second deeds of trust, extinguish the third deed of trust for an agreed-upon payment of $50,000, and pay $520,460 to general unsecured creditors (less than 50 percent of the allowed claims). The plan and disclosure statement provide that LAFCU and Redwood Mortgage are unimpaired, and that Debtor therefore need not pay the default rate of interest specified in the promissory notes. See In re Entz-White Lumber & Supply, Inc., 850 F.2d 1338, 1342 (9th Cir. 1988).

The chapter 11 plan filed by 600 Alabama provides for the eventual sale of the Property. LAFCU and Redwood Mortgage are to retain their liens on the Property, but the plan does not provide for them to retain their liens on all rents and profits. Rental income is to be used to pay debt service to LAFCU and Redwood Mortgage at a market rate to be determined by the court at some later date. The plan is to be administered by a Plan Committee, whose expenses are to be paid from unencumbered assets (which include rental income not necessary to pay current debt service). The Committee has five years from the date of confirmation to sell the Property.

DISCUSSION

A. Debtor's Plan and Disclosure Statement

LAFCU, Redwood Mortgage, 600 Alabama, and Gorry object to approval of Debtor's disclosure statement on numerous grounds. Among the objections is that Debtor's chapter 11 plan cannot be confirmed. Although at least some of the other objections may have

**MEMO RE DISC. STMT. OBJECTIONS
AND STAY-RELIEF MOTIONS** -5-

merit, the court need not address those objections, because it is apparent that Debtor's plan cannot be confirmed.

First, Debtor's plan does not satisfy the absolute priority rule. The plan does not provide for payment in full of the allowed claims of general unsecured creditors. Because the claim of 600 Alabama represents more than one-half in amount of the allowed general unsecured claims, and because 600 Alabama objects to confirmation of the plan, general unsecured creditors do not accept the plan. 11 U.S.C. § 1126(c). Because general unsecured creditors do not accept the plan and are not paid in full, and because the plan provides that the sole equity holder retains an interest in Debtor and the Property in respect of his existing equity interest, the plan does not satisfy the absolute priority rule.[3] 11 U.S.C. § 1129(b)(2)(B).

Second, Debtor's plan cannot be confirmed because it improperly classifies LAFCU as unimpaired. To leave LAFCU unimpaired, the plan must cure all defaults other than those specified in section 365(b)(2). 11 U.S.C. § 1124(2)(A). Debtor's plan does not propose to cure Debtor's breach of the covenant in the LAFCU note barring junior encumbrances. Debtor argues that section 365(b)(2)(D) excuses the cure of virtually all non-monetary defaults, including the due-on-encumbrance clause at issue here, citing In re Bankvest Capital Corp., 360 F.3d 291 (1st Cir. 2004). Debtor's reliance on Bankvest is misplaced and represents a

---

[3] The sole equity holder in Debtor, Mr. Kilroy, would retain an interest in Debtor (and thereby in the Property) "in respect of" his current equity interest, because under Debtor's plan, Mr. Kilroy alone has the right to make the proposed "new value" interest and thereby retain ownership of Debtor and the Property. See Debtor's 4th Am. Disc. Stmt. at 19.

**MEMO RE DISC. STMT. OBJECTIONS AND STAY-RELIEF MOTIONS** -6-

significant breach of Debtor's counsel's duty of candor to this court.

Bankvest did find that section 362(b)(2)(D) excused a debtor from curing most kinds of non-monetary defaults. The court construed the statutory language excusing the cure of any "penalty rate or provision" to mean in substance: any penalty rate, or any provision regarding non-monetary default. Id. at 300-01. Under Bankvest, Debtor would not be required to cure the due-on-encumbrance provision to satisfy section 1124(2)(A).

The problem is that Bankvest acknowledges that the Ninth Circuit had ruled otherwise, and that Bankvest has since been overruled by statutory amendments applicable to the present case. The Bankvest decision expressly noted that the Ninth Circuit had construed the language of section 362(b)(2)(D) to mean in substance: any penalty rate, or any penalty provision regarding a non-monetary default. Id. at 296-98 (citing In re Claremont Acquisition Corp., Inc., 113 F.3d 1029 (9th Cir. 1997)).[4] Claremont also held that the term penalty rate means a default rate of interest, and that penalty provision means a liquidated damages provision. Claremont, 113 F.3d at 1034. The due-on-encumbrance clause at issue here is not a penalty rate or penalty provision within the meaning given to those terms in Claremont. Any question as to whether Claremont or Bankvest is controlling was resolved in the 2005 amendments to the Bankruptcy Code. Section 365(b)(2)(D) now provides that Debtor is excused only from curing a "penalty rate or penalty provision," expressly adopting the Ninth's Circuit

---

[4] The Claremont decision was overruled by statute to excuse non-curable, non-monetary defaults regarding non-residential real property leases. 11 U.S.C. § 365(b)(1)(A). That amendment has no effect upon the present case.

**MEMO RE DISC. STMT. OBJECTIONS
AND STAY-RELIEF MOTIONS**            -7-

Claremont decision.[5] Thus, following the amendments, section 1124(2)(A) requires the cure of almost all non-monetary defaults. In re Empire Equities Capital Corp., 405 B.R. 687, 690-91 (Bankr. S.D.N.Y. 2009).

The discussion of impairment in the Debtor's disclosure statement cited only Bankvest. It did not in any way acknowledge Claremont or the subsequent amendment to section 365(b)(2)(D). This appears to be a serious breach of counsel's duty of candor.[6]

The practical effect of the rejection of Debtor's plan by general unsecured creditors and the plan's failure to leave LAFCU unimpaired, is that Debtor must raise substantially more than $1.7 million to confirm its plan. To satisfy the absolute priority rule by paying 600 Alabama in full, Debtor would have to raise an additional $575,000. To leave LAFCU unimpaired by curing the due-on-encumbrance clause, Debtor would have to raise yet another $1.2 million to repay the second deed of trust.

It is inappropriate to afford Debtor additional time to amend its plan and disclosure statement. The current plan is Debtor's fourth. Debtor was unable to confirm its first three plans. The case has been pending for fourteen months. To confirm a plan in which Debtor retains the Property, Debtor would have to raise substantially more than it proposed to do in its current plan, and the current plan and disclosure statement provide no credible

---

[5] The amendment to section 365(b)(2)(D) is applicable to all cases filed after October 17, 2005. The present case was filed on November 20, 2008.

[6] The court will address this apparent ethical violation through a separate order to show cause.

**MEMO RE DISC. STMT. OBJECTIONS AND STAY-RELIEF MOTIONS** -8-

detail regarding the source of the $1.7 million investment proposed in the current plan.

B.  The Plan and Disclosure Statement filed by 600 Alabama

LAFCU, Redwood Mortgage, and Gorry object on numerous grounds to approval of the disclosure statement filed by 600 Alabama. Among the objections is that the chapter 11 plan filed by 600 Alabama cannot be confirmed. The court agrees, and determines that the disclosure statement should not be approved because the plan cannot be confirmed.

Secured creditors LAFCU and Redwood Mortgage do not accept the 600 Alabama plan. The plan can be confirmed over their objection only if the plan is "fair and equitable" with respect to LAFCU and Redwood Mortgage. Section 1129(b) states only the minimum requirements that must be satisfied for a plan to be fair and equitable. A plan may fail to be fair and equitable in a more general sense even if it satisfies the requirements of section 1129(b). In re D & F Const. Inc., 865 F.2d 673 (5th Cir. 1989). I determine that the 600 Alabama plan is not fair and equitable in that more general sense.

First, the 600 Alabama plan unduly delays full payment of LAFCU and Redwood Mortgage. The plan provides that the Property need not be sold for five years, without curing even the monetary defaults under the LAFCU and Redwood Mortgage notes. It is not inappropriate for the plan to provide for the sale of the Property. If the third deed of trust is avoidable, there might be some proceeds after payment of property taxes, LAFCU, Redwood Mortgage, and costs of sale, even at a sale price close to the value indicated by the LAFCU appraisal. The 600 Alabama plan, however,

seeks not to secure the full value of the Property in the current real estate market, but to hold the Property until the real estate market rises. It is unknowable when, or whether, such a rise will occur. I determine that any plan (or sale procedure outside of a plan) must provide for the sale of the Property as promptly as is commercially reasonable.

Second, the 600 Alabama plan deprives LAFCU and Redwood Mortgage of some of their collateral without providing a replacement lien or other adequate protection.

All parties acknowledge that the rent payable under the current lease is above the current market rate. The value of all income-producing real property is determined by discounting to present value the expected cash flow from the property. The value of 2712 Mission is enhanced to the extent that the rent from the current lease is above-market. As the above-market portion of the rent is collected, however, some of that value is turned into cash and the value of the real property collateral declines correspondingly.

LAFCU and Redwood Mortgage currently have a lien on all rents, including the above-market portion of the current rent. The 600 Alabama plan proposes to strip the lien on the current above-market rental income to the extent that this current rental income exceeds the amount necessary to pay current debt service. 600 Alabama Plan: §§ 5.2; 7.3.4; 7.5; Exh. A, ¶ 6. Thus, the plan would deprive the secured creditors of some of the value of their collateral, without providing a replacement lien or other adequate protection.

There can be no assurance that LAFCU and Redwood Mortgage

**MEMO RE DISC. STMT. OBJECTIONS**
**AND STAY-RELIEF MOTIONS** -10-

ultimately will be paid in full from the sale of the Property. Counsel for 600 Alabama acknowledged at the hearing that if the City does not exercise its option to extend the lease, and rent is reduced to market rate, rental income will not be sufficient to pay debt service on the first and second deeds of trust, and the secured creditors will have to be allowed to foreclose. Because any purchaser will determine the value of the Property from its discounted expected cash flow, 600 Alabama's acknowledgment is tacit recognition that if rental income reverts to market, it is unlikely that the Property could be sold at a price sufficient to pay off the first and second deeds of trust.

I determine that any plan (or program for sale of the Property without a plan) must sequester and hold for LAFCU and Redwood Mortgage all rental income that is not paid to those lenders or expended on necessary maintenance.

C. Secured Creditor's Motion for Relief from Stay

There may be equity in the Property from which unsecured creditors may be paid in part or in full. The circumstances suggest MKA may release its third-priority deed of trust for $50,000. The sum due for property taxes and on the first and second deeds of trust is approximately $11 million. LAFCU's appraisal indicates that the Property had a value of $11.2 million in October 2009. Debtor's appraisal indicates that the Property was worth $13.3 million in March 2009. The proceeds of sale available for secured and unsecured creditors would, of course, be reduced by cost of sale.

The value of the Property can reliably be determined only in a sale. A market transaction is always a more accurate indication of

value than a court determination made on the basis of appraisals. Romley v. Sun Ntl. Bank (In re Two "S" Corp., 875 F.2d 240, 243 (9th Cir. 1989); Takisaki v. Alpine Group, Inc. (In re Alpine Group, Inc.), 151 B.R. 931, 935 (9th Cir. BAP 1993). That is especially so here, where the value of the Property depends heavily upon: (1) whether the City will exercise its option to extend the lease at a rent that all parties agree is above-market; or (2) whether the City will instead attempt to negotiate an amended lease under which the owner and the City share the expenses the City would incur in moving to another location; and (3) what such a negotiated rent would be. At the same time, there is little reason not to determine the value of the Property via sale. Debtor has been unable to confirm a plan under which it would retain the Property, despite ample opportunity to do so. The current rent is sufficient to pay taxes, maintenance, and debt service to LAFCU and Redwood Mortgage pending a prompt sale.

Sale of the Property without confirmation of a chapter 11 plan would reduce cost and delay, without sacrificing creditors' rights. A mechanism can be fashioned whereby unsecured creditors, as well as the Debtor, can move to have the estate accept an offer to purchase. Creditors and the Debtor can be heard at the hearing on any such motion. Secured creditors would enjoy the right to credit bid at any sale. The process of confirming a liquidating plan in this case would be very expensive and would provide creditors little corresponding benefit.

The Property should be sold promptly. A third-party purchaser or foreclosing lienholder should obtain the Property with sufficient time to negotiate with the City regarding the extension

of the lease before the City must exercise its option on April 3, 2011. To afford the new owner sufficient time to evaluate the situation and negotiate with the City, any sale must close before the end of 2010. Such a deadline should afford the estate sufficient time to market the Property in a commercially reasonable manner.

Therefore, the court at this time denies the secured creditors' joint motion for relief from stay, on condition that the Property be marketed actively and sold promptly, which condition is set forth in greater detail in the accompanying order.

**\*\*END OF MEMORANDUM\*\***

| | |
|---|---|
| 1 | **<u>Court Service List</u>** |
| 2 | |
| 3 | Scott H. McNutt, Esq. |
|   | Marianne Dickson, Esq. |
| 4 | McNutt Law Group LLP |
|   | 188 The Embarcadero, Suite 800 |
| 5 | San Francisco, CA 94105 |
| 6 | Merle C. Meyers, Esq. |
|   | Meyers Law Group, P.C. |
| 7 | 44 Montgomery Street, Suite 101 |
|   | San Francisco, CA 94104 |
| 8 | |
|   | Jeanne M. Jorgensen, Esq. |
| 9 | Page and Jorgensen LLP |
|   | 1101 Dove Street, Suite 220 |
| 10 | Newport Beach, CA 92660 |
| 11 | Henry Lerner, Esq. |
|   | Allen Matkins Leck Gamble |
| 12 | Mallory & Natsis LLP |
|   | Three Embarcadero Center, 12th Floor |
| 13 | San Francisco, CA 94111-4074 |
| 14 | Timothy J. Gorry, Esq. |
|   | Gorry, Meyer & Rudd LLP |
| 15 | 2049 Century Park East, 21st Floor |
|   | Los Angeles, CA 90067 |
| 16 | |
|   | Hutchison B. Meltzer, Esq. |
| 17 | Weiland Golden Smiley Wang |
|   | Ekvall & Strok LLP |
| 18 | 650 Town Center Drive, Suite 950 |
|   | Costa Mesa, CA 92626 |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |